UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO. **23-20372-CR-HUCK/BECERRA**

18 U.S.C. § 371
18 U.S.C. § 1348
18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)

UNITED STATES OF AMERICA

v.

PETER KAMBOLIN,

      Defendant.
_____/

## INFORMATION

The United States of America charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

#### Relevant Individuals and Entities

1. Defendant PETER KAMBOLIN was a U.S.-Russian national and resident of Sunny Isles Beach, Florida. PETER KAMBOLIN was a commodity trading adviser ("CTA") and a commodity pool operator ("CPO") under the Commodity Exchange Act, 7 U.S.C. § 1, *et. seq.* In these capacities, PETER KAMBOLIN advised investors on trading futures contracts and solicited investment funds for the purpose of trading futures contracts.

2. PETER KAMBOLIN co-founded and was the owner and Chief Executive Officer of Systematic Alpha Management, LLC ("SAM"), a New York limited liability company with its principal place of business at 18201 Collins Avenue, Sunny Isles Beach, Florida. SAM was an investment management firm. PETER KAMBOLIN marketed SAM as offering investors

1

automatic, algorithm-based trading strategies involving futures contracts.

3. The Commodity Futures Trading Commission ("CFTC") was an independent federal regulatory agency charged by Congress with the administration and enforcement of the Commodity Exchange Act and regulations promulgated thereunder.

4. Jersey City Partners, LLC ("Jersey City") was a New York limited liability company with its principal place of business at 18201 Collins Avenue, Suite 708, Sunny Isles Beach, Florida. PETER KAMBOLIN was the sole owner of Jersey City and made decisions on its behalf. As described below, PETER KAMBOLIN misappropriated profitable trades from SAM's commodity pools into Jersey City's trading accounts and transferred the profits to Jersey City's bank accounts.

5. Thor Enterprises International, Inc. ("Thor") was a Nevis, West Indies corporation with its principal place of business at Hunkins Plaza, Main Street 556, Charlestown, St. Kitts & Nevis. As described below, PETER KAMBOLIN misappropriated profitable trades from SAM's commodity pools into Thor's trading accounts and transferred the profits to Thor's bank accounts.

6. Co-conspirator 1 ("CC-1") was a Russian national who resided in Istanbul, Turkey, and who exercised control over Thor's assets and foreign bank accounts in Belarus and Dominica.

### Background on Futures Contracts

7. A futures contract was an agreement to buy or sell a commodity at a fixed quantity and price for delivery, or cash settlement, at a specific date and time in the future. Cryptocurrency futures contracts were for cash settlement based on the price movements of cryptocurrencies. Foreign exchange futures contracts were for cash settlement based on the price movements of exchange-traded foreign currencies.

8. Futures contracts were traded on exchanges regulated by the CFTC.

9. A futures commission merchant ("FCM") was an individual, association, partnership, corporation, or trust that, among other things, engaged in soliciting or in accepting orders for regulated transactions, including futures contracts.

10. A "suspense account" was a trading account held by an FCM in which trades were executed but subsequently allocated to a different account for clearing.

11. A "managed account" was a trading account in which the account owner granted a CTA authority to trade on behalf of the account owner.

12. A "bunched order" was a single order executed by a CPO or CTA on behalf of multiple commodity pools and/or managed accounts. The CPO or CTA thereafter allocated the trades resulting from a bunched order among the participating pool and/or managed accounts.

13. In the context of securities and commodities fraud, "cherry-picking" is the fraudulent practice of either preferentially misappropriating profitable trades, or failing to allocate unprofitable trades, for the benefit of the adviser and at the expense of the adviser's clients.

## COUNT 1
### Conspiracy to Commit Commodities Fraud
### (18 U.S.C. § 371)

14. The allegations in paragraphs one through thirteen of this Information are realleged and reincorporated as if fully set forth herein.

15. Beginning in or around January 2019 and continuing through in or around November 2021, in the Southern District of Florida and elsewhere, the defendant,

**PETER KAMBOLIN,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with CC-1, and others known and unknown to the United States, to commit a certain offense against the United States, that is: to knowingly execute, or attempt to

execute, a scheme or artifice (1) to defraud any person in connection with any commodity for future delivery; and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money or property in connection with the purchase or sale of any commodity for future delivery, in violation of Title 18, United States Code, Section 1348(1) & (2).

## Purpose of the Conspiracy

16. It was the purpose of the conspiracy for PETER KAMBOLIN and his co-conspirators to fraudulently misappropriate trading profits and losses at the expense of SAM's investors in order to unlawfully unrich themselves.

## Manner and Means of the Conspiracy

The manner and means by which PETER KAMBOLIN and his co-conspirators sought to accomplish the purpose and objects of the conspiracy included, among others, the following:

17. In or around January 2018, PETER KAMBOLIN established the Systematic Alpha Cryptocurrency Master Fund, Ltd. ("Cryptocurrency Pool"), which was a Cayman Islands exempted company that owned trading accounts used to trade futures contracts, and to which investors contributed funds through the Systematic Alpha Cryptocurrency Fund, LP (a Delaware Limited Partnership) or the Systematic Alpha Cryptocurrency Offshore Fund, Ltd (a Cayman Island exempted company).

18. In or around April 2019, PETER KAMBOLIN established the Systematic Alpha FX Master Fund, Ltd. ("FX Pool"), which was a Cayman Islands exempted company that owned trading accounts used to trade futures contracts, and to which investors contributed funds through the Systematic Alpha FX Fund, LP (a Delaware Limited Partnership) or the Systematic Alpha FX Offshore Fund, Ltd (a Cayman Islands exempted company).

19. Between in or around January 2019 and November 2021, PETER KAMBOLIN engaged in a cherry-picking scheme in which he fraudulently allocated trades for futures contracts between: (1) the Cryptocurrency Pool, the FX Pool, and four managed accounts (collectively, the "Customer Accounts"); and (2) Thor and Jersey City's trading accounts (the "Proprietary Accounts").

20. PETER KAMBOLIN executed trades on behalf of the Customer Accounts and Proprietary Accounts using bunched orders that he placed and executed in suspense accounts at various FCMs.

21. PETER KAMBOLIN instructed FCMs to allocate the trades PETER KAMBOLIN executed in the suspense accounts to the Customer Accounts or the Proprietary Accounts.

22. PETER KAMBOLIN allocated profits and losses from trades in a manner designed to benefit the Proprietary Accounts fraudulently and in violation of regulations that were promulgated by the CFTC, which required that CPOs and CTAs direct post-trade allocations on a fair and equitable basis, with no account receiving consistently favorable or unfavorable treatment.

23. More specifically, in numerous instances, PETER KAMBOLIN directed the FCMs holding the suspense accounts to allocate the most profitable trades to the Proprietary Accounts and to allocate the unprofitable or less profitable trades to the Customer Accounts. In doing so, PETER KAMBOLIN defrauded investors in the Cryptocurrency and FX Pools and managed accounts by depriving them of a proportional share of trading profits PETER KAMBOLIN generated and causing investors to incur a disproportionate share of PETER KAMBOLIN's trading losses.

24. PETER KAMBOLIN further defrauded investors in the Cryptocurrency and FX

Pools and managed accounts by misrepresenting to them, in Private Placement Memoranda ("PPMs") and Trading Advisory Agreements, that PETER KAMBOLIN would allocate investment opportunities fairly and equitably among the pools, managed accounts, and proprietary accounts.

25. PETER KAMBOLIN also misrepresented in PPMs, as well as other marketing materials and solicitations, the investment strategies PETER KAMBOLIN would pursue on behalf of investors in the Cryptocurrency and FX Pools. Specifically, PETER KAMBOLIN intentionally created the false impression that each pool would employ a trading strategy that focused on cryptocurrency futures contracts and foreign exchange futures contracts, when in fact approximately half of PETER KAMBOLIN's trading for each pool involved various equity index futures contracts.

26. PETER KAMBOLIN used the proceeds of the conspiracy in order to fund his lifestyle, including paying rent for a beachfront apartment. PETER KAMBOLIN also transferred profits from the conspiracy to Jersey City's domestic bank account, which was located at a bank insured by the Federal Deposit Insurance Corporation. PETER KAMBOLIN then transferred these profits to Thor's foreign bank account that CC-1 controlled, which was located in Belarus and Dominica.

**Overt Act**

27. In furtherance of the conspiracy and to accomplish its unlawful purpose and objects, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, the following overt act, among others:

    a. On or about June 11, 2020, PETER KAMBOLIN sent electronic mail to an

FCM that included instructions to allocate trades unfairly and inequitably among his Proprietary Accounts and the Customer Accounts.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **PETER KAMBOLIN**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Sections 371 and 1348(1) and (2), as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable such a violation pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

MATTHEW KAHN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

PETER KAMBOLIN,

_____/
             Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
- ☒ Miami
- ☐ Key West
- ☐ FTP
- ☐ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:
   (Check only one)
   - I ☒ 0 to 5 days
   - II ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV ☐ 21 to 60 days
   - V ☐ 61 days and over
   
   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
MATTHEW KAHN
DOJ Trial Attorney
FL Bar No.   72032

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** PETER KAMBOLIN

**Case No:** _____

Count #:  1

Title 18, United States Code, Section 371

Conspiracy to Commit Commodities Fraud
* Max. Term of Imprisonment:  5 years
* Mandatory Min. Term of Imprisonment (if applicable):  N/A
* Max. Supervised Release:  3 years
* Max. Fine:  $250,000 or twice the gross gain or loss resulting from the offense

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | | |
|---|---|---|---|
| v. | ) | Case No. | 23-20372-CR-HUCK |
| | ) | | |
| Peter Kambolin, | ) | | |
| *Defendant* | ) | | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**KENDALL COFFEY, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*